IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |  |
|---|---|---|
| **Steven M. Chapman,** <br> Petitioner, | ) <br> ) <br> ) | |
| v. | ) <br> ) | 1:21cv535 (LO/TCB) |
| **Warden, FCC Petersburg-Medium,** <br> Respondent. | ) <br> ) <br> ) | |

MEMORANDUM OPINION

Petitioner Steven M. Chapman is a dishonorably discharged, former member of the U.S. Air Force, who is serving two life sentences imposed by a court-martial. He currently is incarcerated at FCC Petersburg-Medium, pursuant to a Memorandum of Agreement between the Department of the Army and the Federal Bureau of Prisons (BOP). He has petitioned for a writ of habeas corpus under 28 U.S.C. § 2241, challenging his conviction and life sentence for premeditated murder—a crime he committed while serving a previously imposed life sentence for burglary, attempted premeditated murder, rape, and forcible sodomy, at the U.S. Disciplinary Barracks at Fort Leavenworth, Kansas (the "USDB"). Respondent moves to dismiss the petition under Federal Rule of Civil Procedure 12(b)(6), but the supporting memorandum addresses only six of the eight claims raised in the petition. *See* Dkt. No. 14. Because those six claims are either unviewable or meritless, the motion to dismiss will be granted. Respondent will be directed to file a supplemental motion with respect to the remaining two claims.

I. Background & Procedural History

During a recreational softball game at the USDB on July 24, 2010, Chapman struck inmate Michael Fricke twice in the head with an aluminum softball bat after Fricke, who was playing umpire, warned the coach of Chapman's team that the pitcher might be ejected from the

game for unsportsmanlike conduct. *See* DEX 13 ¶ 6. Fricke later was airlifted to Kansas University Medical Center, where he underwent surgery to relieve swelling and internal bleeding in his cranium; was declared braindead five days later; and ultimately died of the injuries sustained from the blunt force trauma to his head. *Id.* ¶¶ 13, 21.

Chapman was charged with premeditated murder in violation of Article 118 of the Uniform Code of Military Justice (UCMJ). DEX 1. A general court-martial was convened at Fort Leavenworth on July 1, 2011. DEX 4, at p. 4. There, defense counsel argued a motion to dismiss for lack of jurisdiction. *Id.*, at p. 15. Counsel asserted that, because Chapman and the victim had already been formally discharged from the armed forces at the time of the murder, subjecting Chapman to court-martial jurisdiction would violate his right to equal protection of the laws in relation to similarly situated civilians prosecuted in Article III courts. *See* DEX 15. Counsel urged in particular that Chapman would not receive the due process afforded to other civilians, especially with respect to the rights afforded in death penalty cases. *See id.*

During a hearing on July 30, 2012, the military judge (MJ) denied the motion to dismiss, concluding that the "defense has not persuaded this court that the accused has suffered a loss of equal protection by being subject to that jurisdiction sufficient to cause this lowly court to declare an act of Congress unconstitutional and overrule over 100 years of case law in this area." *Id.*, at pp. 26–27. The MJ first observed that Article 2(a)(7) of the UCMJ provides that "persons in the custody of the armed forces serving a sentence imposed by a court-martial" are subject to court-martial jurisdiction. *Id.*, at p. 25. "There's nothing in the statute," the MJ continued, "that would cause anyone to even remotely believe that there was some unspoken exception for those who received their punitive discharge before they are released from confinement." *Id.* The MJ further opined that "a long line of cases have held that military jurisdiction over former military

persons serving a sentence imposed by a court-martial is constitutional because such jurisdiction does not bring civilians under military control, but merely continues existing military jurisdiction." *Id.* Concerning the equal-protection argument, the MJ explained that, subsequent to the cases relied on by defense counsel, there have been "changes in the military justice system" that "have proven that we can protect the constitutional rights of Soldiers, including their death penalty due process rights . . . and still do the nation's business of defending this country and its citizens." *Id.*, at p. 26.

After the MJ denied the motion to dismiss, the parties prepared for Chapman to enter a guilty plea. *See id.*, at p. 27. The MJ admonished Chapman that the plea "will not be accepted unless you realize that by your plea, you admit every act or omission and every element of the offense to which you're pleading guilty, and that you're pleading guilty because you actually are, in fact, guilty." *Id.*, at p. 28. Chapman confirmed that he understood. *Id.* Next, Chapman confirmed that he had "voluntarily enter[ed] into the [fact] stipulation because [he] believe[d] it [was] in [his] best interest to do that." *Id.*, at p. 31. The MJ told Chapman that the fact stipulation would be used for the purposes of deciding whether he was actually guilty and to determine an appropriate sentence. *Id.* The MJ then gave Chapman an opportunity to "clear up any contradictions" in the fact stipulation and to declare "right now if there's anything whatsoever you disagree with or feel is untrue." *Id.* Chapman confirmed that "everything in the stipulation of fact [is] true." *Id.*, at p. 32.

Next, the MJ explained each element of the offense to which Chapman was pleading guilty.

> Element number one, that Inmate Michael W. Fricke is dead;
> Element number two, that his death resulted from your act in striking Inmate Michael W. Fricke in the head with a baseball bat at Fort Leavenworth, Kansas, on or about 24 July 2010;

>    Element number three, that the killing of Inmate Michael W. Fricke by you was unlawful; and
>    Element number four, that at the time of the killing, you had the premeditated design to kill Inmate Michael W. Fricke.

*Id.*, at pp. 33–34. The MJ next explained premeditated design to kill.

>    "Premeditated design to kill" means the formation of a specific intent to kill and consideration of the act intended to bring about death. The premeditated design to kill does not have to exist for any measurable or particular length of time. The only requirement is that it must precede the killing.

*Id.*, at p. 34.

Then, Chapman explained in his own words why he is guilty of premeditated murder.

>    I'm guilty of premeditated murder of Mr. Michael Fricke because on 24 July 2010, I was the third base coach for my softball team and Mr. Fricke was the home plate umpire. Before the game started, Mr. Fricke came and gave us a briefing, basically, how the game would go. He stated in the interest of time he was going to call a "hitter's game," meaning that any ball that came across the plate was going to be a strike.
>    … [T]his pretty much didn't happen for our team. It happened for the other team, but it was pretty evident by the third inning; and just as everyone else on the team was, I was getting heated as well.
>    . . .
>
>    Mr. Fricke started back to home plate and I started back for the coach's box on the third base line. When I got back to the third base area, I saw that Mr. Fricke was at the fence halfway between home plate and the on-deck circle calling for the head coach.
>    . . . [A]s the third base assistant coach, I started over to see what the issue was. As I got close enough to hear what was being said, I heard Mr. Fricke say something to the effect of, "If your pitcher berates me or accuses me of being unfair one more time, I will eject him." When I heard this . . . I got pissed and thought, "I'm going to jack this guy up."
>    I also thought, "this is a big guy," so . . . I walked to the guy on the on-deck circle to get the bat. As I got the bat in my hand, I thought, "so I'm going to kill this guy." I turned around, walked a couple steps, and hit him in the back of the head with the bat. When he fell forward, he landed with his head – with his face turned to the left. I then hit him again with the bat on the left side of his head. Once I saw blood running out of his left ear, I figured he was dead, so I threw the bat down.

*Id.*, at pp. 36–37.

4

Chapman further declared that "[a]t no time on" the date of the murder "did I consume any intoxicating substance," and that he "was not suffering any mental disease or defect and was able to fully appreciate the nature, quality, and wrongfulness of my acts." *Id.*, at p. 37. Chapman added that he "knew what [he] was doing was a horrible thing, and [he] did it anyway." *Id.* Finally, Chapman admitted that he "had the specific intent to kill Mr. Fricke before [he] swung that bat at his head." *Id.*, at p. 38. Chapman told the MJ that although he was reading from a written document, he wrote the whole colloquy himself without the assistance of his lawyer and that he understood all of the concepts he discussed. *Id.*, at p. 40. Later, the MJ asked Chapman if he was "satisfied that [his] defense counsels' advice is in [his] best interest"; Chapman said yes. *Id.*, at p. 60.

Finally, Chapman pleaded guilty to committing premeditated murder, and the MJ found him guilty of the offense. *Id.*, at p. 61. The next day, on July 31, 2012, the MJ imposed a sentence of life imprisonment without eligibility for parole. DEX 5.

Chapman's case was subject to mandatory review by the Army Court of Criminal Appeals (ACCA). *See* 10 U.S.C. § 866(b); *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016).[1] He was represented by two new military defense attorneys, who submitted the case to the ACCA "upon its merits" without "admit[ting] that the findings and sentence are correct in law and fact." DEX 6. Appended to the request for review is Chapman's list of issues that he, not his attorneys, sought to raise, as permitted by *United States v. Grostefon*, 12 M.J. 431, 436–37 (C.M.A. 1982). Chapman raised the following seven claims:

---

[1] The ACCA has plenary *de novo* review and is obligated to ensure that "the evidence provides proof of the appellant's guilt of each offense beyond a reasonable doubt." *United States v. Roach*, 66 M.J. 410, 412 (C.A.A.F. 2008).

 (1) Chapman received ineffective assistance of counsel because his appointed attorneys were not capitally qualified under the standards of the American Bar Association (ABA);

 (2) Chapman received ineffective assistance of counsel because his appointed attorneys did not allow him to assist in his own defense;

 (3) Chapman was denied his right to participate and assist in the preparation of his appeal;

 (4) The MJ erred by denying the motion to dismiss for lack of jurisdiction;

 (5) Chapman's trial was tainted by unlawful command influence;

 (6) The threat of capital referral forced Chapman to accept a fact stipulation that contained irrelevant and highly prejudicial information about the victim as well as false information; and

 (7) The sentence of life without parole is inappropriate for Chapman's offense.

DEX 6.

 Before the ACCA appeal was filed, the army approved on January 7, 2013, Chapman's request to be transferred to the custody of the BOP pursuant to a Memorandum of Agreement between the Department of the Army and the BOP. DEX 8.

 The ACCA affirmed the Chapman's conviction and sentence in an order dated January 17, 2014. DEX 10. The ACCA declared, "[o]n consideration of the entire record, including consideration of the issues personally specified by the appellant, we hold the findings of guilty and the sentence as approved by the convening authority correct in law and fact." *Id.*

 On April 18, 2014, Chapman's appellate counsel filed a petition for review to the Court of Appeals for the Armed Forces (CAAF). DEX 7. Like the ACCA brief, counsel "submit[ted] the case upon its merits" without "admit[ting] that the findings and the sentence are correct in law and fact." *Id.* Appended to counsel's submission was another *Grostefon* brief that Chapman

6

authored, raising the same seven claims he raised to the ACCA. *Compare* DEX 6, *with* DEX 7. The CAAF denied the petition for review on August 1, 2014. DEX 11.

On April 30, 2021, Chapman filed a § 2241 petition in this Court, Dkt. No. 1, followed by a corrected, amended § 2241 petition filed on July 30, 2021, Dkt. No. 10. He identifies eight grounds for relief:

> (1) Article 2(a)(7) of the UCMJ is unconstitutional because Chapman is a civilian;
>
> (2) Neither the ACCA nor the CAAF had jurisdiction to review Chapman's court-martial conviction because Chapman had been discharged from the armed forces and transferred to the BOP for incarceration;
>
> (3) The court-martial was plagued by unlawful command influence;
>
> (4) Defense counsel was constitutionally ineffective because they were not capital qualified under the ABA;
>
> (5) The threat of capital referral forced Chapman to accept a fact stipulation that contained irrelevant and highly prejudicial information about the victim;
>
> (6) The sentence of life without parole is inappropriate for the offense;
>
> (7) Defense counsel was constitutionally ineffective for refusing to allow Chapman to assist in his own defense and by giving him false information to induce him into accepting a plea agreement; and
>
> (8) Chapman is actually innocent of the premediated murder.

Dkt. No. 10.

## II. Standard of Review

A motion to dismiss a petition for a writ of habeas corpus under Rule 12(b)(6) "tests the legal sufficiency of the petition." *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). When conducting this test, "the district court must consider the face of the petition and any attached exhibits." *Id.* (internal quotation marks and citation omitted). Additionally, the district court may

7

consider the public records from petitioner's court-martial proceedings without converting the motion into one for summary judgment. *See id.*

A petition under § 2241 is the proper vehicle for challenges to a conviction and sentence imposed by a court-martial, but "a military court decision that 'has dealt fully and fairly with an allegation in [the § 2241] application' is 'final' and 'binding' upon all courts." *Ward v. United States*, 982 F.3d 906, 912 (4th Cir. 2020) (alteration in original) (quoting *Burns v. Wilson*, 346 U.S. 137, 142 (1953)). Thus, when the military courts have "fully and fairly reviewed" a claim presented in a § 2241 petition, that claim is not subject to this Court's review. *See id.*

The Fourth Circuit "has yet to enunciate the exact standard governing collateral attacks of court-martial convictions," but many district courts within its jurisdiction have adopted the Tenth Circuit's test for determining when a claim has been fully and fairly reviewed by the military courts. *Chinchilla v. Whitley*, No. 3:20cv871, 2021 WL 1792075, at *3 (E.D. Va. May 5, 2021) (collecting cases). Under that test review is appropriate only if four elements are satisfied:

> (1) the asserted error is of substantial constitutional dimension, (2) the issue is one of law rather than disputed fact, (3) no military considerations warrant a different treatment of constitutional claims, and (4) the military courts failed to give adequate consideration to the issues involved or failed to apply proper legal standards.

*Thomas v. U.S. Disciplinary Barracks*, 625 F.3d 667, 670–71 (10th Cir. 2010). The Tenth Circuit considers the fourth factor to be the most important. *See id.* at 671.

### III. Analysis

*A) Claim (1)*

In Claim (1) Chapman contends that Article 2(a)(7) of the UCMJ is unconstitutional because he was a civilian when he murdered another inmate and, thus, the military courts lacked jurisdiction to prosecute him. Respondent first argues that this claim should be dismissed

because the military courts fully and fairly considered it. Second, respondent argues alternatively that this claim fails to state a claim for relief.

The Court rejects respondent's first argument because it ignores that federal courts "may consider habeas claims challenging the court-martial's jurisdiction." *United States v. Willenbring*, 178 F. App'x 223, 224 (4th Cir. 2006). Still, the Court agrees with respondent that Chapman's claim is without merit. Although Chapman was squarely within the court-martial's statutory jurisdiction over "[p]ersons in custody of the armed forces serving a sentence imposed by a court-martial," 10 U.S.C. § 802(a)(7), he challenges the constitutionality of this jurisdiction as applied to him because when he committed the murder he no longer retained a service connection to the military. But a service connection is not always required for court-martial jurisdiction. Indeed, in *Solorio v. United States*, 483 U.S. 435 (1987), the Supreme Court ruled that the crime, itself, need not have a service connection as a predicate for court-martial jurisdiction. And Chapman does not point to a single case in which a federal court has demanded a service connection for a court-martial to preside over criminal proceedings initiated against a former servicemember who committed the crime *while in the military's carceral custody* for a crime committed as an active servicemember. Rather, the Supreme Court long ago placed its imprimatur on this continuing jurisdiction, and this remains the law of the land. *See Kahn v. Anderson*, 255 U.S. 1, 7–8 (1921); *Carter v. McClaughry*, 183 U.S. 365, 383 (1902); *United States v. Joshua*, 607 F.3d 379, 390 n.8 (4th Cir. 2010).

Chapman protests, urging the Court to extend to Article 2(a)(7) the ruling of *Larrabee v. Braithwaite*, 502 F. Supp. 3d 322 (D.D.C. 2020), which evaluated the constitutionality of Article 2(a)(6) of the UCMJ. Article 2(a)(6), as relevant here, provides court-martial jurisdiction over members of the Fleet Marine Corps Reserve, which is composed of retired active-duty

9

servicemembers who have chosen to be transferred to this unit rather than be fully discharged from the military. *See Larrabee*, 502 F. Supp. 3d at 324. These Reserve unit members are not on active or reserve duty but may be ordered to active duty during wartime, national emergency, or "as otherwise authorized by law," and to participate in peacetime training. *Id.* at 324–25 (citing 10 U.S.C. § 8385(a), (b)). The district court in *Larrabee* concluded that "in the absence of a principled basis promoting good order and discipline, Congress's present exercise of court-martial jurisdiction over all members of the Fleet Marine Corps Reserve is unconstitutional." *Id.* at 333. The district court admonished that it was "not concluding today that Congress could never authorize the court-martial of some military retirees, but merely that Congress has not shown on the current record why the exercise of such jurisdiction over all military retirees is necessary to good order and discipline." *Id.* at 332. But Chapman's argument, from the beginning, has been an as-applied challenge to Article 2(a)(7), not a facial challenge. And the *Larrabee* ruling leaves room for court-martial jurisdiction over military retirees on a case-by-case basis. Because Chapman brings an as-applied challenge to Article 2(a)(7), the holding in *Larrabee* is inapt, and the Court declines to extend its holding here.

### B) Claim (2)

In Claim (2), Chapman urges that the military appeals courts did not have jurisdiction to review his court-martial conviction for two reasons: (1) because the underlying court-martial did not have jurisdiction to impose the conviction; and (2) because after the court-martial entered judgment, he was transferred into the physical custody of the BOP. Respondent contends that Chapman's first argument is baseless because the court-martial, indeed, had jurisdiction over the prosecution. Second, respondent argues that the military appellate courts' jurisdiction does not depend on where an inmate is confined at the time of review.

This jurisdictional claim also must be dismissed. First, the Court already concluded that the underlying court-martial had jurisdiction over the criminal proceedings, rendering meritless Chapman's first argument. Concerning Chapman's second argument, the Court cannot conclude that the military appellate courts lost jurisdiction over Chapman when he was transferred into the custody of the BOP. As respondent observes, there is no statutory basis for Chapman's argument. To the contrary, the UCMJ explicitly provides that "[a] Court of Criminal Appeals shall have jurisdiction over a court-martial in which the judgment entered . . . includes a sentence of . . . confinement for 2 years of more." 10 U.S.C. § 866(b)(3). It is this provision that provided automatic review of Chapman's court-martial by the ACCA. *See id.* The UCMJ also provides authority for the CAAF to review the decision of the ACCA. *See id.* § 867(b). All told, "[o]nce jurisdiction attaches, it continues until the appellate processes are complete," leaving each military appellate court with jurisdiction to review Chapman's appeals. *United States v. Davis*, 63 M.J. 171, 176 (C.A.A.F. 2006) (quoting *United States v. Entner*, 36 C.M.R. 62, 62 (C.M.A. 1965)).

*C) Claim (3)*

In Claim (3) Chapman contends that the court-martial was plagued by unlawful command influence. Respondent argues that this claim should be dismissed because the military courts fully and fairly considered it.

Respondent is correct. "Where an issue is adequately briefed and argued before the military courts the issue has been given fair consideration, even if the military court disposes of the issue summarily." *Roberts v. Callahan*, 321 F.3d 994, 997 (10th Cir. 2003). Chapman raised this argument to the ACCA and the CAAF. The ACCA announced that the claim had been considered and rejected. The CAAF denied Chapman's petition for review.

Chapman counters that the appellate courts would have held an evidentiary hearing if they had fully and fairly considered this issue. The Court disagrees. As respondent points out, the court-martial had already explored the issue of unlawful command influence during the sentencing hearing, *see* DEX 4, at p. 101, and Chapman does not explain what else needed to be examined in additional hearings. Instead, he highlights only what was already in the record. Chapman has not persuaded the Court that this claim was not fully and fairly considered by the military courts, and, therefore, Claim (3) cannot be reviewed.

### D) Claim (4)

In Claim (4) Chapman asserts that his defense attorneys were constitutionally ineffective because they were not capital qualified under the ABA. Respondent argues that this claim should be dismissed because it was fully and fairly considered by the military courts.

This claim, too, is unreviewable. Chapman argues, again, that the military courts of appeals would have held a hearing had they fully and fairly considered the issue. But Chapman, ultimately, was subjected to a general court-martial, not a capital court-martial, and so there would have been no reason to hold a hearing to develop a claim that his lawyers were unqualified to represent him in a capital case. Chapman has not persuaded the Court that this claim was not fully and fairly considered, and, therefore, it must be dismissed..

### E) Claim (7)

In Claim (7) Chapman argues that he received constitutionally deficient assistance of counsel during his court-martial because his appointed attorneys refused to allow him to participate in his defense and lied to him so that he would plead guilty in lieu of proceeding to trial. Respondent contends that the former ground was fully and fairly considered by the military courts and that the latter ground has been waived.

The Court agrees with respondent. In his *Grostefon* briefs Chapman urged that he received ineffective assistance because his appointed lawyers did not allow him to participate in his defense. He now argues, again, that without conducting a hearing the military appeals courts could not possibly have fully and fairly considered this claim. But this argument is speculative, and, moreover, Chapman has not proffered what evidence he would have put forward—outside of his own assertions that were already available to the ACCA and CAAF—to convince this Court that an evidentiary hearing would have been necessary for the military appellate courts to fully and fairly consider this claim of ineffective assistance of counsel. *See Watson v. McCotter*, 782 F.2d 143, 145 (10th Cir. 1986) ("There is no indication . . . that the military must provide an evidentiary hearing on an issue to avoid further review in the federal courts. On the contrary, less than an evidentiary hearing has amounted to 'full and fair consideration.'").

Concerning Chapman's argument that his attorneys wrongfully induced him to plead guilty, respondent rightly points out that Chapman raised this argument for the first time in his § 2241 petition. *Compare* Dkt. No. 10, *with* DEX 6, *and* DEX 7. In his *Grostefon* briefs Chapman principally argued that his lawyers repeatedly withheld from him case-related information that would have influenced his decision to enter the plea agreement. *See* DEX 6; DEX 7. Chapman never argued below that counsel lied to him so that he would enter into a pretrial agreement. As with any other habeas petition, this Court will not review claims that have not been exhausted properly in the military courts. *See Schlesinger v. Councilman*, 420 U.S. 738, 758 (1975); *Gusik v. Schilder*, 340 U.S. 128, 131–32 (1950); *Hennis v. Hemlick*, 666 F.3d 270, 277 (4th Cir. 2012); *Roberts v. Callahan*, 321 F.3d 994, 995 (10th Cir. 2003). Waived claims may be reviewed only if the petitioner demonstrates cause and prejudice or a fundamental miscarriage of justice. *See Roberts*, 321 F.3d at 995.

Chapman has not explained why he failed to raise this argument earlier. Instead, he argues that ineffective assistance claims do not have to be raised before filing a habeas petition in federal court. This is true for federal prisoners seeking relief under 28 U.S.C. § 2255. But the reasons underlying that rule are not applicable to Chapman's § 2241 petition. There are two principle reasons for allowing ineffective-assistance claims to be brought for the first time in a § 2255 motion. First, requiring ineffective-assistance claims to be brought on direct appeal "create[es] the risk that defendants would feel compelled to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Second, "the issue would be raised for the first time in a forum not best suited to assess those facts." *Id.* But Chapman repeatedly argues in the § 2241 petition that the military appeals courts were empowered to, and should have, held a hearing to develop the factual basis for his other ineffective-assistance claims. Moreover, his argument against waiver does not square with the fact that he raised other ineffective-assistance claims below, and he does not explain why he waited to raise this ineffective-assistance claim and not others. Chapman has therefore not shown cause for the defaulted portion of this ineffective-assistance claim, and it must be denied. *See Squire v. Ledwith*, No. 14-3081, 2016 WL 204423, at *2 (D. Kan. Jan. 15, 2016), *aff'd*, 674 F. App'x 823 (10th Cir. 2017) (concluding that one of petitioner's ineffective-assistance claims was waived because, unlike petitioner's other ineffective-assistance claims, it was not presented below in military courts, and record did not show cause and prejudice or fundamental miscarriage of justice to excuse default).

*F) Claim (8)*

In Claim (8) Chapman asks this Court to vacate his conviction because he is actually innocent of premeditated murder. Respondent argues that this claim is waived and underdeveloped.

To the extent that freestanding actual-innocence claims are permitted, the Supreme Court has opined that federal habeas relief would be warranted only if the petitioner "persuades the district court that, in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (internal citation omitted). But Chapman does not offer any new evidence to support his claim of actual innocence. He principally argues that the evidence already in the record does not prove premeditation beyond a reasonable doubt. He also now contends that he was on unspecified "psych medication to help with dysthemic disorder, ADHD, OCD, and anxiety," but he does not explain how those medications would have precluded a jury from finding premeditation beyond a reasonable doubt. *See* Dkt. No. 11, at p. 9. To the extent this qualifies as "new evidence," this new assertion directly contradicts Chapman's sworn testimony that he was not under the influence of an "intoxicating substance" at the time of the murder and that he "was not suffering any mental disease or defect and was able to fully appreciate the nature, quality, and wrongfulness of [his] acts." DEX 4, at p. 37. During a trial, this sworn testimony would have been available to impeach any evidence Chapman raised to show that medication precluded his ability to form the requisite intent for premediated murder, preventing this Court from concluding that no reasonable juror, with this "new evidence," could have found him guilty beyond a reasonable doubt. The actual innocence claim therefore must be denied.

## IV. Conclusion

For the reasons stated above, respondent's motion to dismiss, *see* Dkt. No. 14, will be granted. In an Order that will issue alongside this Memorandum Opinion, respondent will be directed to respond to petitioner's remaining claims—the claims identified above as Claim (5) and Claim (6).

Entered this 10' day of Nov. 2022.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge